B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only)<br>26-90003-CL7 |
|---|---|

| PLAINTIFFS<br><br>Ashkan Rajaee | DEFENDANTS<br><br>Christopher Barclay, Jesse Finlayson,<br>Finlayson Toffer Roosevelt & Lilly LLP |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Daryoush (Darius) Shahrouzi / NDM Law<br>901 W Civic Center Dr Ste #4028 Santa Ana, CA 92703<br>(714) 200-2288 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only)<br>☑ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☑ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
(1) Fraud on the Court, (2) Ultra Vires Acts; Acts Outside the Scope of Trustee Authority; Loss of Immunity (3) Breach of Fiduciary Duty — Duty of Loyalty, Disinterestedness, and Candor, (4) Breach of Fiduciary Duty — Duty of Care, Investigation, and Reasonable Administration, (5) Aiding and Abetting Breach of Fiduciary Duty, (6) Civil Conspiracy, (7) Abuse of Process, Retaliation and Misuse of Court Procedures, (8) Declaratory Relief (Voidness of Orders; Lack of Authority), (9) Disgorgement / Restitution / Unjust Enrichment

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(a) – Recovery of Money/Property**<br>☐ 11-Recovery of money/property - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☑ 14-Recovery of money/property - other | **FRBP 7001(f) – Dischargeability (continued)**<br>☐ 61-Dischargeability - §523(a)(5), domestic support<br>☐ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>   (other than domestic support)<br>☐ 65-Dischargeability - other |
| **FRBP 7001(b) – Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property | |
| **FRBP 7001(c) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | **FRBP 7001(g) – Injunctive Relief**<br>☐ 71-Injunctive relief – imposition of stay<br>☐ 72-Injunctive relief – other |
| **FRBP 7001(d) – Objection/Revocation of Discharge**<br>☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(h) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest |
| **FRBP 7001(e) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation | **FRBP 7001(i) Declaratory Judgment**<br>☑ 91-Declaratory judgment |
| **FRBP 7001(f) – Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,<br>   actual fraud<br>☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny<br><br>**(continued next column)** | **FRBP 7001(j) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause<br><br>**Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*<br>☐ 02-Other (e.g. other actions that would have been brought in state court<br>   if unrelated to bankruptcy case) |

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ 50,000,000 |
| Other Relief Sought | |

#302874

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Ashkan Rajaee and Nassim Rajaee | BANKRUPTCY CASE NO.<br>24-00617-CL7 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Southern District of California | DIVISION OFFICE<br>San Diego | NAME OF JUDGE<br>Christopher B. Latham |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>January 6, 2026 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Darius Shahrouzi | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Daryoush (Darius) Shahrouzi SBN 321876
NDM Law
901 W Civic Center Dr Ste #4028
Santa Ana, CA 92703
Email: dariuslawgroup@gmail.com
Tel: Office (714) 200 2288

Attorney for Plaintiff

FILED
2026 JAN -6 PM 12: 28
U.S. BANKRUPTCY CT.
SOUTHERN DIST. OF CALIF.

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br>Ashkan Rajaee<br><br>                    Debtor. | Chapter 7 Case:  24-00617-CL7<br>Adv. Case No.: |
| ASHKAN RAJAEE, an Individual,<br><br>                    Plaintiff/Debtor<br>v.<br><br>CHRISTOPHER R. BARCLAY, an Individual; JESSE S. FINLAYSON, an Individual; and FINLAYSON TOFFER ROOSEVELT & LILLY LLP, a California Limited Liability Partnership.<br><br>                    Defendants | **COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**<br><br>**[DEMAND FOR JURY TRIAL]** |

0

## I.    NATURE OF THE ACTION

1.    This is an action arising from the administration of a bankruptcy estate in which a chapter 7 trustee and his counsel exercised court-delegated authority over disputed property, non-debtor rights, and estate causes of action based on representations that were legally impossible, materially misleading, and fabricated as a matter of law.

2.    Plaintiff **Ashkan Rajaee** ("Plaintiff" or "Rajaee") does not seek to relitigate settled disputes, re-argue the merits of prior rulings, or pursue an appeal disguised as a collateral attack. Rather, Plaintiff challenges independent misconduct that corrupted the judicial process itself, including the knowing submission of false or legally impossible authority, concealment of dispositive facts, and misuse of the Court's coercive power.

3.    The gravamen of this action is fraud on the Court and ultra vires conduct, not discretionary case administration. Plaintiff alleges that Defendants knowingly relied upon and advanced a fabricated corporate-governance document to create the false appearance of authority that did not and could not exist under governing law, and that this fabricated authority was indispensable to the orders subsequently entered.

4.    Plaintiff seeks declaratory, equitable and monetary relief against Defendant **Christopher Barclay** ("Trustee" or "Barclay") in his individual capacity for acts alleged herein that were undertaken outside the scope of lawful trustee authority, including ultra vires acts, fraud on the Court, knowing misrepresentations and concealment of material facts. Such acts are not protected by trustee immunity and give rise to personal liability.

5.    Plaintiff further seeks monetary damages, including compensatory and consequential damages, disgorgement of fees, and such other relief as may be proven at trial, against Defendants **Jesse S. Finlayson** ("Finlayson") and **Finlayson Toffer Roosevelt & Lilly LLP** ("FTRL"), **not merely as agents or counsel to the Trustee**, but for their **own independent and affirmative tortious conduct as officers of the Court**, including the drafting, filing and advocacy of representations they knew or were charged

with knowing were **legally impossible, materially misleading, and indispensable to the Court's exercise of authority**.

6.      As to Defendant Barclay, Plaintiff seeks declaratory and equitable relief, including declarations that orders procured through fraud on the Court and fabricated authority are void and unenforceable, and such further relief as is necessary to restore the integrity of the judicial process.

7.      As to Defendants Finlayson and FTRL, Plaintiff seeks monetary damages, including compensatory damages, consequential damages, disgorgement of fees, and all other relief available at law, based on their independent tortious conduct as officers of the Court, including fraud on the Court, aiding and abetting breaches of fiduciary duty, civil conspiracy, and abuse of process.

8.      Trustee immunity does not extend to fraud on the Court, knowing submission of false evidence, fabrication of authority, or intentional concealment of material facts. Derivative or quasi-judicial immunity likewise does not shield a trustee's counsel who personally drafts, files, and advocates false or legally impossible representations to the Court.

9.      Defendants Finlayson and FTRL are not sued merely as agents of the Trustee, but for their own affirmative acts, undertaken for compensation, that caused direct financial harm to Plaintiff and proximately resulted in void orders, lost rights, increased litigation costs and substantial monetary damages.

10.     Orders procured through fraud on the Court or ultra vires conduct are void and subject to challenge notwithstanding principles of finality, and Defendants who knowingly participated in procuring such orders are liable in damages.

11.     Plaintiff therefore seeks declaratory, equitable and monetary relief, including damages against Defendants Finlayson and FTRL, to remedy injuries caused by conduct that fell outside the bounds of lawful bankruptcy administration and protected advocacy.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

## II.    **JURISDICTION AND CORE NATURE OF PROCEEDING**

12.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

13.    This action arises in, and relates to, a case under title 7 and concerns acts taken by a Chapter 7 Trustee and his counsel in connection with the administration of the bankruptcy estate.

14.    The matters alleged herein constitute core proceedings within the meaning of 28 U.S.C. § 157(b), including, but not limited to:

    a.  the administration of the estate;

    b.  the allowance or disallowance of claims;

    c.  the approval of compromises and settlements under Federal Rule of Bankruptcy Procedure 9019;

    d.  the exercise of trustee authority over property and asserted causes of action; and

    e.  the integrity and validity of orders entered by the Bankruptcy Court.

15.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409 because the underlying bankruptcy case was filed and administered in this District and the acts complained of occurred in connection with proceedings before this Court.

16.    This Court has jurisdiction to determine whether acts taken by a trustee and officers of the Court were within the scope of lawful authority or constituted ultra vires conduct, fraud on the Court, or knowing misrepresentations affecting the integrity of judicial proceedings.

17.    Plaintiff does not seek appellate review of prior orders, nor does Plaintiff request this Court to reconsider discretionary rulings on the merits. Rather, Plaintiff seeks relief based on allegations that material orders were procured through fabricated authority, intentional misrepresentation, and concealment of dispositive facts, rendering such orders void and outside the protection of immunity or finality doctrines.

18.     To the extent any Defendant asserts that the acts alleged herein fall outside the scope of core jurisdiction, this Court retains authority to hear and determine such matters, or alternatively to submit proposed findings of fact and conclusions of law, pursuant to 28 U.S.C. § 157(c).

19.     This Court further has authority to award declaratory, equitable, and monetary relief against defendants sued in their individual capacities for acts taken under color of federal authority that exceeded lawful jurisdiction or violated duties owed to the Court and to parties in interest.

### III.     PARTIES AND ROLES

#### A.     Plaintiff

20.     Plaintiff ASHKAN RAJAEE ("Plaintiff" or "Debtor") is the debtor in the underlying bankruptcy case pending before the United States Bankruptcy Court for the Southern District of California.

21.     Plaintiff is a citizen of Canada and a party in interest subject to the jurisdiction and coercive authority of the Bankruptcy Court.

22.     Plaintiff possesses direct pecuniary, statutory, and constitutional interests in the lawful administration of the bankruptcy estate, including the validity of orders entered, the accuracy and completeness of representations made to the Court, and the protection of non-debtor property and rights.

#### B.     Defendant Christopher R. Barclay (Chapter 7 Trustee)

23.     Defendant CHRISTOPHER R. BARCLAY ("Barclay" or "Trustee") was appointed as Chapter 7 Trustee in Plaintiff's bankruptcy case.

24.     At all relevant times, Barclay acted under color of federal authority and exercised powers delegated by statute and by orders of the Bankruptcy Court.

25.     As Chapter 7 Trustee, Barclay owed fiduciary duties to the bankruptcy estate and to parties in interest, including duties of loyalty, care, candor, investigation, and good-faith administration.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

26. Barclay is sued in his individual capacity for acts alleged herein that were undertaken outside the scope of lawful trustee authority, including ultra vires acts, fraud on the Court, knowing misrepresentations, and concealment of material facts.

**C.    Defendant Jesse S. Finlayson (Trustee's Counsel)**

27. Defendant JESSE S. FINLAYSON ("Finlayson") is an attorney licensed to practice law in the State of California.

28. At all relevant times, Finlayson acted as legal counsel to the Chapter 7 Trustee in connection with the administration of Plaintiff's bankruptcy case.

29. Finlayson personally drafted, reviewed, signed, filed, and advocated pleadings, declarations, settlement motions, and other submissions presented to the Bankruptcy Court in connection with estate administration and proceedings under Federal Rule of Bankruptcy Procedure 9019.

30. Finlayson is sued in his individual capacity for his own acts and omissions, including knowing participation in the submission of false or legally impossible representations to the Court, concealment of material facts, and coordination with adverse parties to procure court orders through fabricated or nonexistent authority.

31. Finlayson's alleged conduct was not limited to protected legal advocacy, but included affirmative acts undertaken as an officer of the Court that fall outside any derivative or quasi-judicial immunity.

**D.    Defendant Finlayson Toffer Roosevelt & Lilly LLP**

32. Defendant FINLAYSON TOFFER ROOSEVELT & LILLY LLP ("FTRL") is a California limited liability partnership and is the law firm through which Finlayson rendered legal services to the Trustee.

33. FTRL received compensation from the bankruptcy estate for the services rendered by Finlayson in connection with the conduct alleged herein.

34.    FTRL is named as a defendant based on principles of agency, respondeat superior, and its receipt of fees arising from acts alleged to have been ultra vires and in violation of fiduciary, statutory, and constitutional duties.

**E.    Acting in Concert and Under Color of Authority**

35.    At all relevant times, Defendants Barclay and Finlayson acted in concert and under color of federal authority in connection with the administration of the bankruptcy estate.

36.    The acts alleged herein include coordinated conduct between the Trustee and his counsel in drafting, submitting, and advocating representations to the Court concerning corporate authority, settlement approval, and control over disputed and non-debtor property.

37.    Each Defendant is liable for his own acts and for acts taken in knowing participation with others as part of a unified course of conduct directed at procuring court approval through misrepresentation, omission, and fabricated authority.

## IV.    FACTUAL BACKGROUND AND CHRONOLOGY

**A.    The San Diego Judgment as the Sole Predicate for Conversion and Estate Authority**

38.    The underlying bankruptcy case was converted to Chapter 7 based primarily, if not exclusively, on a judgment entered in San Diego Superior Court confirming an arbitration ruling (the "San Diego Judgment").

39.    From the outset of the Chapter 7 case, the San Diego Judgment was treated as the dispositive predicate for standing, conversion of the case, recognition of claims, and the Chapter 7 Trustee's asserted authority to administer assets and pursue causes of action.

40.    Plaintiff consistently advised the Trustee that the San Diego Judgment was void and unenforceable due to jurisdictional defects, statutory defects, and defects inherent in the arbitration process itself.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

41.    Plaintiff further advised the Trustee that the validity of the San Diego Judgment presented a threshold and dispositive legal issue that had to be adjudicated before any lawful exercise of trustee authority could occur.

42.    Plaintiff warned that administering the estate, recognizing claims, and compromising causes of action without first determining the legal validity of the San Diego Judgment risked the exercise of authority that did not exist as a matter of law.

43.    Despite repeated notice, the Trustee did not file a motion to vacate the San Diego Judgment, seek declaratory relief concerning its validity, or otherwise request judicial determination of whether the judgment could lawfully serve as the basis for estate authority.

44.    Instead, the Trustee proceeded to administer the estate, recognize claims derived from the San Diego Judgment, and pursue derivative actions that presupposed the judgment's validity.

45.    In doing so, the Trustee treated the San Diego Judgment as immune from scrutiny while affirmatively relying on it as the source of authority, thereby avoiding adjudication of whether that authority existed as a matter of law.

46.    As set forth below, the Trustee's avoidance of adjudicating this threshold defect was not inadvertent but was necessary to preserve the appearance of authority required to administer disputed property, compromise claims, and bind non-debtor rights.

**B.    Conversion to Chapter 7 and Distortion of Estate Authority**

47.    Following conversion of the case to Chapter 7, the Trustee assumed control over estate administration based on the continued, unadjudicated assumption that the San Diego Judgment was valid and enforceable.

48.    The conversion to Chapter 7 materially altered the posture of the case by vesting the Trustee with control over asserted causes of action and disputed property

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

1   interests that depended entirely on the validity of the San Diego Judgment as the predicate

2   for authority.

3        49.    Plaintiff objected to the conversion and thereafter continued to notify the

4   Trustee that, absent adjudication of the threshold defects in the San Diego Judgment, the

5   Trustee lacked lawful authority to administer disputed claims and property derived from

6   that judgment.

7        50.    Despite this notice, the Trustee proceeded to recognize claims, assert

8   standing, and exercise control over asserted estate interests without first seeking judicial

9   determination of whether the foundational judgment conferring such authority was void.

10       51.    As a result, the conversion process distorted estate administration by

11  transforming a disputed and legally defective judgment into an unexamined source of

12  authority, thereby insulating it from scrutiny and foreclosing adjudication of dispositive

13  issues.

14       52.    The Trustee's reliance on the untested San Diego Judgment during and after

15  conversion permitted the administration of claims and property interests that would not

16  have been subject to estate control had the threshold validity issues been adjudicated.

17       53.    This distortion of estate authority was not a neutral consequence of

18  conversion, but the direct result of the Trustee's decision to proceed while avoiding

19  adjudication of defects that would have defeated standing, authority, and control at the

20  outset.

21       54.    The conversion to Chapter 7 thus operated, in practice, to entrench the San

22  Diego Judgment as an unchallengeable predicate, rather than as a judgment subject to

23  examination for jurisdictional and statutory validity.

24  **C.    Rule 9019 Settlements and the Extinguishment of Claims Without**

25  **Adjudication**

26       55.    After conversion to Chapter 7, the Trustee pursued approval of multiple

27  settlement agreements pursuant to Federal Rule of Bankruptcy Procedure 9019 that

28

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

purported to resolve substantial asserted claims and disputes without first adjudicating the threshold defects underlying the Trustee's asserted authority.

56.    The settlements proposed by the Trustee sought to extinguish approximately seventy-five million dollars ($75,000,000) in asserted claims and causes of action through compromises reached without judicial determination of whether the San Diego Judgment—upon which standing, authority, and claim recognition depended—was valid and enforceable.

57.    The Trustee represented to the Bankruptcy Court that the proposed settlements were the product of reasonable business judgment and months of investigation and negotiation.

58.    In support of the Rule 9019 motions, the Trustee asserted that the settlements were fair, equitable, and in the best interests of the estate, notwithstanding Plaintiff's repeated objections that dispositive legal defects had not been adjudicated.

59.    Plaintiff objected to the proposed settlements on the ground that the Trustee lacked lawful authority to compromise claims derived from or dependent upon a judgment that was void or unenforceable as a matter of law.

60.    Plaintiff further objected that the settlements improperly foreclosed adjudication of threshold jurisdictional and statutory issues that, if resolved, would have defeated or materially altered the Trustee's asserted control over disputed claims and property.

61.    Rather than seek adjudication of these threshold issues, the Trustee proceeded to present the settlements to the Court as *fait accompli*, effectively using Rule 9019 as a mechanism to bypass judicial determination of authority.

62.    The proposed settlements relied upon representations that the Trustee possessed authority to bind disputed interests and resolve claims notwithstanding the absence of any judicial determination validating the predicate judgment or the Trustee's asserted standing.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

63.    Approval of the settlements thus depended on the Court accepting, without adjudication, the continued validity of the San Diego Judgment and the Trustee's derivative authority flowing from it.

64.    The Rule 9019 process was thereby distorted from its intended purpose of approving compromises within lawful estate authority into a procedural vehicle for extinguishing claims and insulating dispositive defects from judicial review.

65.    Plaintiff expressly warned that approval of the settlements without adjudicating threshold defects would result in the permanent extinguishment of rights and claims based on authority that did not exist as a matter of law.

66.    Notwithstanding these warnings, the Trustee advanced the settlements for approval without disclosing or litigating the dispositive authority defects identified by Plaintiff.

67.    The Court approved the Rule 9019 settlements based on the representations presented, including the Trustee's assertions of authority and standing that had not been subjected to threshold adjudication.

68.    As a result, the settlements extinguished substantial claims and foreclosed adjudication of dispositive legal issues, not through reasoned judicial determination, but through reliance on unexamined and legally defective predicates.

69.    The use of Rule 9019 in this manner caused direct and substantial injury by converting disputed and legally defective authority into binding settlement outcomes without lawful foundation.

70.    The Trustee's pursuit and presentation of the Rule 9019 settlements under these circumstances constituted conduct outside the scope of lawful estate administration and was integral to the broader pattern of avoiding adjudication of dispositive defects set forth herein.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

**D.    The "Unanimous Written Consent" and the Fabrication of Corporate Authority**

71.    In order to obtain approval of the Rule 9019 settlements and to bind disputed interests, the Trustee and his counsel relied upon a document titled "Unanimous Written Consent of the Members of TopDevz, LLC" (the "Unanimous Written Consent" or "UWC").

72.    The Unanimous Written Consent was presented to the Bankruptcy Court as proof that the Trustee and a third party possessed collective authority to bind TopDevz, LLC and to extinguish claims purportedly belonging to or affecting that entity.

73.    The settlement agreements were expressly conditioned on the existence and validity of the Unanimous Written Consent, and the Trustee's motions represented that the document established the requisite corporate authority necessary for approval.

74.    The Unanimous Written Consent purported to establish that the Trustee was a member of TopDevz, LLC and that the signatories collectively possessed authority to authorize settlements, releases, and related transactions on behalf of the company.

75.    As a matter of governing law and under the operative TopDevz, LLC operating agreement, the authority asserted in the Unanimous Written Consent could not and did not exist.

76.    At no time was the Trustee admitted as a member of TopDevz, LLC.

77.    No unanimous vote of the members of TopDevz, LLC occurred admitting the Trustee as a member or conferring governance rights.

78.    No amendment to the operating agreement was executed or approved authorizing the Trustee to act as a member or manager.

79.    No filing or amendment reflecting a change in membership or governance was made with the California Secretary of State.

80.    Under applicable law, possession of an economic interest alone does not confer voting, management, or governance authority in a limited liability company.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

81.     Accordingly, the Unanimous Written Consent was legally impossible, void ab initio, and incapable of conferring authority to bind TopDevz, LLC or extinguish its rights.

82.     Notwithstanding its legal impossibility, the Unanimous Written Consent was submitted to the Bankruptcy Court and relied upon as a material predicate for settlement approval.

83.     The Trustee and his counsel represented, expressly and by implication, that valid corporate authority existed when, in fact, it did not and could not exist as a matter of law.

84.     The Trustee and his counsel further failed to disclose to the Court the absence of any lawful vote, amendment, or admission conferring such authority.

85.     The Bankruptcy Court's approval of the settlements depended on the existence of lawful authority to bind TopDevz, LLC, as represented through the Unanimous Written Consent.

86.     But for the representations made regarding the Unanimous Written Consent, the settlements could not have been approved.

87.     The submission and reliance upon the Unanimous Written Consent therefore constituted the use of fabricated authority to procure judicial approval.

88.     The use of a legally impossible governance document to obtain court approval corrupted the judicial process and deprived the Court of the ability to adjudicate the true legal status of authority, standing, and control.

89.     The Trustee's reliance on the Unanimous Written Consent was not the result of mistake or inadvertence, but part of a broader course of conduct designed to avoid adjudication of dispositive issues that would have defeated asserted authority.

90.     The presentation of the Unanimous Written Consent as valid authority constituted fraud on the Court and an ultra vires act undertaken outside the scope of lawful trustee authority.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

91.    As a direct and proximate result, the Court entered orders based on representations of authority that were false as a matter of law, causing substantial injury and extinguishment of rights without lawful foundation.

**E.    Counsel's Role, Coordination, and Knowing Participation**

92.    Defendant Jesse S. Finlayson served as legal counsel to the Trustee throughout the period in which the Rule 9019 settlements were negotiated, drafted, and presented to the Bankruptcy Court.

93.    Finlayson personally participated in drafting, reviewing, and filing pleadings and declarations submitted to the Court in support of the Trustee's asserted authority and the proposed settlements.

94.    Finlayson's involvement was not ministerial or passive; rather, he actively advised, coordinated, and participated in the presentation of the Unanimous Written Consent as valid corporate authority.

95.    Finlayson jointly participated in the preparation of the Unanimous Written Consent with counsel for adverse parties and received executed signature pages transmitted by opposing counsel.

96.    Finlayson knew, or was willfully blind to the fact, that no lawful vote, amendment, or admission had occurred that could confer the authority asserted in the Unanimous Written Consent.

97.    Notwithstanding this knowledge, Finlayson proceeded to submit and advocate the Unanimous Written Consent to the Court as a valid and operative governance document.

98.    Finlayson further advanced representations that the Trustee and third parties collectively possessed authority to bind TopDevz, LLC, despite the absence of any lawful basis for such authority.

99.    Finlayson did not disclose to the Court that the asserted authority depended on assumptions that had never been adjudicated and could not exist under governing law.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

100.   During the pendency of the settlement proceedings, Finlayson engaged in communications and coordination with counsel for parties whose interests were adverse to the estate regarding settlement structure, authority representations, and approval strategy.

101.   Such coordination included discussions concerning how authority would be presented to the Court in order to obtain approval without adjudication of threshold defects.

102.   Finlayson also participated in efforts to shield these communications and coordination from disclosure, including seeking protective orders and resisting inquiry into the basis for asserted authority.

103.   After Plaintiff objected that the proposed settlements and authority representations constituted fraud on the Court, Finlayson did not withdraw the challenged submissions or seek clarification from the Court.

104.   Instead, Finlayson continued to advocate approval of the settlements while disregarding Plaintiff's express objections that the authority relied upon was fabricated and legally impossible.

105.   Finlayson's conduct was undertaken for compensation and directly contributed to the procurement of court orders that extinguished substantial rights based on false representations of authority.

106.   Finlayson's actions were independent of the Trustee's discretionary authority and constituted knowing participation in ultra vires acts and fraud on the Court.

107.   Defendant FTRL received fees from the bankruptcy estate for services rendered in connection with the conduct alleged herein.

108.   The law firm is liable for the acts of Finlayson under principles of agency and respondeat superior and as a recipient of fees generated through conduct that exceeded lawful authority.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

109.   As a direct and proximate result of counsel's knowing participation, the Court was deprived of accurate information necessary to adjudicate authority, standing, and control, and Plaintiff suffered substantial monetary and legal harm.

110.   Counsel's conduct, taken together with the Trustee's actions, formed a unified course of conduct designed to procure court approval through fabricated authority while avoiding adjudication of dispositive legal defects.

**F.    Damages, Harm, and Resulting Injury**

111.   As a direct and proximate result of the acts and omissions described above, Plaintiff suffered substantial and concrete injury.

112.   The Trustee's and counsel's reliance on fabricated and legally impossible authority resulted in the extinguishment of substantial claims and rights without lawful adjudication.

113.   Plaintiff incurred significant legal fees and costs in objecting to the Rule 9019 settlements, opposing the use of fabricated authority, and attempting to compel adjudication of threshold defects that were deliberately avoided.

114.   Plaintiff further suffered economic harm arising from the loss of potential recoveries and legal positions that would have remained available had authority and standing been properly adjudicated.

115.   The entry of orders based on false representations of authority caused Plaintiff to incur ongoing litigation expenses, procedural disadvantage, and loss of leverage in related proceedings.

116.   Defendant Barclay's conduct, undertaken outside the scope of lawful trustee authority, exposed Plaintiff to direct monetary harm, including costs, fees, and financial consequences flowing from ultra vires acts and fraud on the Court.

117.   Defendant Finlayson's knowing participation in the submission and advocacy of fabricated authority caused Plaintiff additional monetary harm, including increased litigation expenses and the loss of rights extinguished through invalid orders.

118.   Defendant FTRL benefited financially from the conduct alleged herein by receiving fees paid from the bankruptcy estate in connection with acts that exceeded lawful authority.

119.   The injuries suffered by Plaintiff were foreseeable and the natural consequence of Defendants' conduct in presenting false authority to the Court and suppressing adjudication of dispositive issues.

120.   Plaintiff's damages are continuing in nature and include past, present, and future losses that will be proven at trial.

121.   Plaintiff is entitled to recover compensatory damages, consequential damages, disgorgement of fees, and such other monetary relief as is permitted by law against Defendants sued in their individual capacities.

122.   Plaintiff is further entitled to declaratory and equitable relief to remedy the effects of orders procured through fraud on the Court and ultra vires conduct.

## V.   THRESHOLD JURISDICTIONAL, IMMUNITY, AND AUTHORITY LIMITATIONS

123.   Plaintiff realleges and incorporates by reference paragraphs 1 through 122 as though fully set forth herein.

124.   This adversary proceeding does not seek appellate review of prior rulings, reconsideration of discretionary case-management decisions, or a collateral attack on the merits of any order. Rather, Plaintiff challenges whether the Bankruptcy Court was induced to enter material orders through fabricated authority, knowing misrepresentations, and concealment of dispositive facts that prevented the Court from performing its neutral adjudicative function.

125.   Fraud on the Court, lack of lawful authority, and ultra vires conduct constitute threshold defects that are not cured by finality, waiver, res judicata, or prudential abstention doctrines where the judicial process itself was corrupted and the Court's ability to adjudicate threshold defects was suppressed through material deception.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

126.   Trustee immunity and any derivative or quasi-judicial immunity apply only to acts taken within the scope of lawful authority and good-faith administration. Such immunity does not extend to: (a) fraud on the Court; (b) knowing submission of false or legally impossible authority; (c) intentional concealment of material facts; (d) misuse of court process to suppress inquiry; or (e) ultra vires acts undertaken without statutory or legal authorization.

127.   Defendant Christopher R. Barclay is sued in his individual capacity for conduct alleged herein that was undertaken outside the scope of lawful trustee authority, including ultra vires acts and fraud on the Court, giving rise to personal liability for damages, disgorgement, and equitable relief.

128.   Defendants Finlayson and FTRL are not shielded by trustee immunity or litigation privilege. They are sued for their own independent and affirmative acts as officers of the Court—including drafting, submitting, and advocating fabricated or legally impossible authority, and coordinating conduct designed to procure judicial approval while avoiding adjudication of dispositive defects.

129.   Plaintiff does not seek to impose liability based on protected legal advocacy, good-faith legal argument, or strategic judgment. Counsel Defendants are sued solely for extra-advocacy conduct that falls outside any immunity or privilege, including the knowing promotion of a governance document that was legally impossible as a matter of law.

130.   Defendants' misconduct was knowing, intentional, and undertaken with actual knowledge of the absence of lawful authority, or, at minimum, with willful blindness to legal impossibility. The conduct alleged herein was not the product of mistake, negligence, or reasonable legal interpretation.

131.   To the extent Defendants invoke the Barton doctrine or related gatekeeping principles, such defenses are fact-dependent and cannot defeat this pleading, which

1    alleges ultra vires conduct, fraud on the Court, and knowing participation in the

2    fabrication of authority and suppression of adjudication.

3        132.    Based on the foregoing, Plaintiff asserts the following causes of action, each

4    pleaded in the alternative and to the extent applicable against the Defendants identified

5    therein.

6    ## VI.    CAUSES OF ACTION

7    ### FIRST CAUSE OF ACTION

8    **Fraud on the Court (Fabricated Authority; Material Omissions; Void Orders)**

9    **(Against All Defendants)**

10        133.    Plaintiff realleges and incorporates by reference paragraphs 1 through 132

11    as though fully set forth herein.

12        134.    Fraud on the Court occurs where officers of the Court knowingly submit

13    false evidence, fabricate authority, or conceal material facts in a manner that corrupts the

14    judicial process and prevents the Court from performing its neutral adjudicative function.

15        135.    Defendants submitted, relied upon, and affirmatively advocated a fabricated

16    and legally impossible corporate-governance document—the "Unanimous Written

17    Consent"—to create the false appearance of authority that did not exist and could not

18    exist as a matter of law.

19        136.    Defendants represented, expressly and by implication, that valid corporate

20    authority existed to bind TopDevz, LLC and extinguish rights and claims, while

21    concealing that no lawful vote, admission, amendment, or state-law compliance had

22    occurred.

23        137.    The absence of lawful corporate authority was not a disputed factual issue

24    subject to weighing by the Court, but a threshold legal impossibility that Defendants were

25    obligated to disclose and could not lawfully bypass through inference, assumption, or

26    settlement expediency.

27

28

138. The fabricated authority and material omissions were indispensable to the Rule 9019 settlement approvals and related orders, and were material to the Court's findings of authority, fairness, and propriety of compromise.

139. As a direct and proximate result, the Court entered orders based on false representations of authority, extinguishing rights and claims without lawful foundation and corrupting the integrity of judicial proceedings.

140. Defendants' conduct constitutes fraud on the Court, rendering the affected orders void to the extent predicated on fabricated authority, and giving rise to liability, including monetary damages against Defendants sued in their individual capacities.

## SECOND CAUSE OF ACTION

### Ultra Vires Acts; Acts Outside the Scope of Trustee Authority; Loss of Immunity
### (Against Defendant Barclay)

141. Plaintiff realleges and incorporates by reference paragraphs 1 through 140.

142. A Chapter 7 Trustee acts ultra vires when he exercises power not conferred by statute or court order, or when he acts in the absence of lawful authority, including by fabricating authority and binding non-debtor rights without legal foundation.

143. Defendant Barclay exercised control over disputed claims and sought Court approval of settlements predicated on fabricated authority that did not exist as a matter of law.

144. Defendant Barclay's conduct, including reliance on legally impossible corporate authority and deliberate avoidance of adjudication of threshold defects, constituted ultra vires conduct outside the scope of lawful trustee authority.

145. At no time did the Bankruptcy Court authorize Defendant Barclay to fabricate, assume, or retroactively construct corporate governance authority where none existed under governing state law.

146. Barclay is personally liable for damages proximately caused by his ultra vires acts.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

### THIRD CAUSE OF ACTION

### Breach of Fiduciary Duty — Duty of Loyalty, Disinterestedness, and Candor

### (Against Defendant Barclay)

147.   Plaintiff realleges and incorporates by reference paragraphs 1 through 146.

148.   As Chapter 7 Trustee, Barclay owed fiduciary duties of loyalty, disinterestedness, impartiality, and candor to the estate and parties in interest.

149.   Barclay breached these duties by advancing fabricated authority to procure settlement approvals, prioritizing expediency and fee certainty over lawful adjudication, failing to make full and candid disclosures of material facts, and suppressing adjudication of dispositive authority defects.

150.   A reasonably prudent trustee exercising independent judgment would have sought threshold adjudication of authority before compromising claims or binding non-debtor interests.

151.   Plaintiff suffered damages as a direct and proximate result of these breaches.

### FOURTH CAUSE OF ACTION

### Breach of Fiduciary Duty — Duty of Care, Investigation, and Reasonable

### Administration

### (Against Defendant Barclay)

152.   Plaintiff realleges and incorporates by reference paragraphs 1 through 151.

153.   Barclay owed a duty to administer the estate with reasonable care, diligence, investigation, and independent judgment.

154.   Barclay breached this duty by failing to investigate and litigate threshold authority defects, relying on legally impossible documents, and proceeding under Rule 9019 without lawful authority.

155.   A minimally competent fiduciary would not have proceeded under such circumstances.

156.   Plaintiff suffered damages as a direct and proximate result.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

### FIFTH CAUSE OF ACTION

### Aiding and Abetting Breach of Fiduciary Duty

### (Against Defendants Finlayson and FTRL)

157.  Plaintiff realleges and incorporates by reference paragraphs 1 through 156.

158.  Defendant Barclay breached fiduciary duties as alleged herein.

159.  Defendants Finlayson and FTRL had actual knowledge of the authority defects or were willfully blind to the legal impossibility of the Unanimous Written Consent.

160.  They substantially assisted the breaches by drafting, submitting, and advocating fabricated authority that was indispensable to securing Court approval.

161.  Plaintiff suffered damages as a direct and proximate result.

### SIXTH CAUSE OF ACTION

### Civil Conspiracy

### (Against All Defendants)

162.  Plaintiff realleges and incorporates by reference paragraphs 1 through 161.

163.  Defendants agreed and acted in concert to procure court approval through fabricated authority while avoiding adjudication of dispositive defects.

164.  The conspiracy included express and implied coordination regarding how authority would be presented to the Court so as to entrench void predicates through procedural finality.

165.  Defendants committed overt acts in furtherance of the conspiracy, causing Plaintiff harm.

### SEVENTH CAUSE OF ACTION

### Abuse of Process; Retaliation and Misuse of Court Procedures

### (Against All Defendants)

166.  Plaintiff realleges and incorporates by reference paragraphs 1 through 165.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

167.    Defendants used court process for improper purposes, including suppressing inquiry into authority defects and entrenching fabricated authority.

168.    Such misuse included invoking protective, coercive, and procedural mechanisms not to advance adjudication on the merits, but to obstruct inquiry and chill Plaintiff's right to petition the Court.

169.    Plaintiff suffered damages as a direct and proximate result.

### EIGHTH CAUSE OF ACTION

### Declaratory Relief (Voidness of Orders; Lack of Authority)

### (Against All Defendants)

170.    Plaintiff realleges and incorporates by reference paragraphs 1 through 169.

171.    An actual and continuing controversy exists regarding the validity and enforceability of orders procured through fabricated authority.

172.    Declaratory relief is necessary to resolve ongoing adverse legal consequences, including enforcement, preclusive effects, and third-party reliance.

### NINTH CAUSE OF ACTION

### Disgorgement / Restitution / Unjust Enrichment

### (Against Finlayson and FTRL; and as Applicable to Barclay)

173.    Plaintiff realleges and incorporates by reference paragraphs 1 through 172.

174.    Defendants received fees and benefits arising from conduct that constituted fraud on the Court and ultra vires acts.

175.    Disgorgement is sought not as a penalty, but to restore the parties to the position they would have occupied absent the misconduct.

176.    Equity requires restitution and disgorgement of such fees.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.  For declaratory relief that orders procured through fabricated authority, fraud on the Court, and ultra vires conduct are void and unenforceable to the extent predicated on such misconduct;

2.  For monetary damages against Defendant Barclay in his individual capacity, including compensatory and consequential damages in an amount to be proven at trial;

3.  For monetary damages against Defendants Finlayson and FTRL, including compensatory and consequential damages in an amount to be proven at trial;

4.  For disgorgement/restitution of trustee and professional fees to the extent proven at trial and as equity requires, including disgorgement against Finlayson and FTRL;

5.  For costs of suit and allowable litigation expenses;

6.  For pre-judgment and post-judgment interest as permitted by law;

7.  For such other and further relief as the Court deems just and proper.

Dated: January 6, 2026

NDM Law

By:  /s/ Darius Shahrouzi

Darius Shahrouzi (SBN 321876)
Attorney for Plaintiff.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

## **DEMAND FOR JURY TRIAL**

Plaintiff Ashkan Rajaee hereby demands a trial by jury on causes of action that qualify for jury trial.

Dated: January 6, 2026

NDM Law

By:   /s/ Darius Shahrouzi

Darius Shahrouzi (SBN 321876)
Attorney for Plaintiff.

24

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF